# JUNE TERM, 1878.

———◦———

THE FLINT & PERE MARQUETTE RAILWAY COMPANY v.
PHILETUS STARK, ADM'R.

*Railway trains—Negligent injury to passengers—Declaration.*

Negligence consists in the failure to observe that degree of care which the law requires for the protection of the interests likely to be injuriously affected by the want of it.

A declaration for negligent injury must set forth the duty which has been neglected, and aver the neglect, and the case fails if such neglect is not proved.

Railway trains should stand at the stations a reasonable time before their departure, to permit passengers to enter them; usually twenty or thirty minutes is more than can reasonably be demanded; but until it becomes necessary to put them in position to await passengers, there is no negligence in moving them back and forth as the convenience of the company in making up and stationing other trains may require.

A railway passenger trying to board the wrong train, fell and was killed in consequence of the sudden movement of the train. *Held* that there could be no recovery for the passenger's death as caused by the wrongful act, neglect or default of the railway company, on a declaration alleging it to have been the company's duty to receive and transport *such passenger by that train.*

A railway company may be liable on proper averments, for damages resulting from misleading announcements whereby passengers are led to attempt to board the wrong train.

Error to Saginaw. Submitted April 4. Decided June 4.

TRESPASS ON THE CASE. Defendant brings error.

*Wm. L. Webber* and *Benton Hanchett* for plaintiff in

error. A plaintiff cannot recover on evidence of negligence not alleged in the declaration, *Lund v. Tyngsboro*, 11 Cush., 563; *Shaw v. Bost. & Worcester R. R. Co.*, 8 Gray, 45; *Wilbur v. Brown*, 3 Den., 356; *Parker v. Rensselaer etc. R. R. Co.*, 16 Barb., 315; 1 Chitty's Pl., 291, 376, 384-6; Tidd's Pr., 440, 444; *Max v. Roberts*, 12 East, 89; *King v. Everett*, 8 B. & C., 114.

*Wisner & Draper* for defendant in error.

COOLEY, J. The defendant in error as administrator of Julia B. Stark brought suit against the railway company under the statute which gives an action to the personal representative of one whose death has been caused by the wrongful act, neglect or default of another. The death occurred at East Saginaw in September, 1875, in consequence of falling or being thrown under the cars while making the attempt to get upon them.

We learn from the record that the State fair was being held at East Saginaw at the time of the accident, and that the deceased, who was the wife of the plaintiff, had gone from her home in Birch Run to attend it. She expected to return by the cars of defendant, and the train she intended to take was advertised to leave at five o'clock. Some time before that hour the company's servants were engaged in moving cars and engines about the tracks, making up trains for freight and passengers. At fifteen minutes past four o'clock, and perhaps somewhat later, a train with engine attached was standing by the platform where passengers were accustomed to take the cars, and upon some of the cars were placards announcing that that train was for Flint and other points in the direction of Birch Run. The putting of these placards on the cars appears to have been a mistake, as the train was not intended for the south; and they were taken off when attention was called to them, though not until after the accident had occurred. Mrs. Stark seeing the train standing by the platform, and apparently sup-

posing it to be the one she should take, started in haste to get aboard. The evidence all indicates that she was excited with the fear of being left. She was quite a large woman, fifty-six years of age, and was seriously encumbered with luggage, but with her left hand she took hold of the guard about the platform of one of the cars, and made the attempt to get aboard, a man on the platform taking hold of her right hand to assist her. The witnesses disagree as to whether the train was in motion before she made this effort, the defendant's witnesses testifying that it was, while the plaintiff's witnesses gave evidence that the train was moved with a sudden jerk just as Mrs. Stark lifted her foot to step upon the platform. Either because of the motion, or because Mrs. Stark's foot was caught in her dress, as some of the witnesses thought, the man who was endeavoring to assist her lost his hold, and she fell beneath the cars and was run over.

There was no dispute whatever that when the accident occurred it was still some time before the cars should leave; the lowest estimate placing it at twenty minutes. It seems also to have been proved beyond controversy that servants of the railway company called out several times to persons who seemed disposed to get upon the cars, that this train was not the train for them to take. There was also evidence from a number of witnesses that Mrs. Stark when eagerly rushing for the cars was expressly told by them or by others in their hearing that it was not yet time for the train to go, and. was warned against the attempt to get aboard; but the jury for some reason put aside all this evidence, and expressly found that she was not warned at all. That she was excited, anxious and eager to get aboard in haste is not left in doubt by the evidence, and this eagerness it is somewhat difficult to account for except upon the theory of the defendant, that the train was actually in motion when she made the attempt, and that she feared being left. Several persons noticed her

actions, and appear to have been alarmed for her safety.

The questions of law made on the argument are *first,* Whether a *prima facie* case of negligence was made out against the railway company, and if so, then *second,* Whether a right of action is precluded by contributory negligence on the part of the plaintiff's intestate.

Negligence consists in the failure to observe that degree of care which the law requires for the protection of the interests likely to be injuriously affected by the want of it. In making out negligence, the first requisite is to show the existence of the duty which has been neglected. That duty is necessarily set out in the declaration, and the neglect averred, and a failure to prove it is a failure to make out the plaintiff's case. The duty a breach of which is relied upon in the present case is set out in the declaration as follows:

" The plaintiff says that on the 17th day of September, A. D. 1875, the said Julia B. Stark, deceased, in her lifetime, being at East Saginaw, was desirous of being carried by said defendant, in and on its train of cars, as a passenger, from East Saginaw to Birch Run, in said county, and said deceased was ready and willing to pay the usual price or fare to said company for such carriage, and the plaintiff avers that said defendant was willing to carry said deceased, and all others who wished to be so carried, and for the purpose of carrying said deceased, and all others who were desirous of being carried by defendant; said defendant, on the 17th day of September, A. D. 1875, caused a train of its cars to be drawn to its station at the city of East Saginaw, in said county, at or near the place where the fair of the Michigan State Agricultural Society was then being held in said city, for the purpose of receiving in and upon its said train, for carriage from East Saginaw to Birch Run, said deceased and others who wished to be carried by said defendant, and plaintiff avers that it thereupon became and was the duty of defendant, to allow and permit the said deceased, and all others who wished to enter upon said train, to do so before the same should be started, and while standing still so they could safely enter upon said train, and said plaintiff avers that while said deceased, with the consent and permission of said defendant, with all due care and diligence on her part, was entering upon one of the cars of said train, for the purpose aforesaid, said

defendant negligently and carelessly caused the said train, on which deceased was then entering, to be violently and suddenly started, jerked and moved, by means whereof such deceased, while in the exercise of proper care and diligence, was violently thrown from the car on which she was entering at the time said train was so suddenly started, jerked and moved, and was thrown onto the ground between the car on which she was about entering and the car behind that one, and the car behind the one she was so entering ran over her, and she was thereby then and there killed."

Here the duty supposed to have been neglected is very plainly and specifically described, and it is seen to have consisted in the duty to receive the intestate with care upon the train then drawn up to the platform, on her offering herself for the purpose.

Whether any such duty was incumbent upon the railroad company must depend *first*, upon whether the train mentioned was the one intended for the particular trip, and *second*, upon its being then ready for the receipt of passengers upon it. If this train was not the one which was made up to be sent south from East Saginaw at five o'clock, there was obviously no duty imposed upon the railway company to receive upon it any one who designed going in that direction at the hour named; and if this train had been made up for that purpose, and only chanced to be at the station some considerable time before the hour for starting, it is equally obvious that there could have been no obligation on the part of the railway company to leave it standing there for persons to enter until the hour should arrive. All that can justly be required of the company is that its trains shall stand at the station a reasonable time to permit people to enter them before the hour announced for departure; and twenty or thirty minutes was not required for any such purpose, and was therefore more than could reasonably have been demanded. There was consequently no breach of duty on the part of the railway company in failing to leave the train standing at the station until the hour of departure had arrived, and it might right-

fully have been moved back and forth as the convenience of the company in making up and stationing other trains might require.

But the evidence shows without contradiction that this particular train was not intended for this trip at all. The plaintiff, however, answers this showing by evidence of the placards being upon the cars, which announced to those who should observe them that this train was to go south at five o'clock. It is said with entire justice that the public had a right to put faith in these placards, and that if there was any mistake in the announcement, the consequences should fall upon the railway company whose fault it was. But the fact of the mistake could impose upon the company no duty to send upon the trip a train not suited to it or not designed for it: it was both lawful and proper to correct the mistake at any time allowing reasonable time for people to get aboard before the hour for leaving, and however much any individual may have been inconvienced thereby, his complaint must have been of something else than a failure to perform the particular duty of sending upon the advertised trip a train not intended for it. When therefore it appeared beyond question that the railway company did not "cause a train of its cars to be drawn to its station" "for the purpose of receiving in and upon its said train for carriage from East Saginaw to Birch Run said deceased and others who wished to be carried by said defendant," this fact disproved any obligation on the part of the defendant "to allow and permit the said deceased and all others who wished to enter upon said train to do so before the same should be started." The particular duty relied upon was disproved, and the alleged cause of action was not established.

It is undoubtedly the duty of railway companies not to mislead the public by their announcements, and for a breach of this duty an action may lie when damage is shown. But whoever sues for such an injury must

count upon it: he cannot sue for the breach of one duty and recover for the breach of another. Besides, he must show that the injury followed the breach ; and in this case there was no showing that the deceased saw and was misled by the placards, and the evidence tended to show that she was relying upon what she could learn by inquiry of the persons about her.

This view of the case renders it unnecessary and perhaps improper to discuss the question of contributory negligence which received so much attention at the hands of counsel on the argument.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.