[Louisville & Nashville Railroad Co. v. Marbury Lumber Co.]

# Louisville & Nashville Railroad Co. v. Marbury Lumber Co.

*Action against Railroad Company to recover Damages caused by Fire from Sparks from Locomotive.*

1. *Action for damages; sufficiency of complaint.*—In an action to recover damages for alleged negligence, the complaint is sufficient if it alleges a duty owing the plaintiff by the defendant, or states the facts from which the law will imply the duty, and that the defendant negligently failed to observe such duty; and it is not necessary to set out in detail the specific acts constituting the negligence complained of.

2. *Same; same.*—In an action against a railroad company, a count of the complaint which claims damages for that, "the defendant negligently set fire to and destroyed, to-wit, seventy bales of cotton, the property of plaintff, located on the premises of the plaintiff and of the value," &c., states a sufficient cause of action and is not subject to demurrer.—(TYSON, J., *dissenting.*)

3. *Same; same.*—In an action against a railroad company, a complaint which seeks to recover damages for that "the defendant by the negligence of its agents and servants who were then and there engaged in the operation of a train of cars and engine upon defendant's railway track * * * negligently threw from said engine sparks which set fire to cotton the property of the plaintiff, of the value," &c., states a sufficient cause of action and is not subject to demurrer. (TYSON, J., *dissenting.*)

4. *Action against railroad company to recover damages by fire alleged to have been caused by sparks emitted from a locomotive; burden of proof.*—In an action against a railroad company to recover damages resulting from fire alleged to have been caused by the negligent escape of sparks from a locomotive running on the defendant's road, proof by the plaintiff that the fire was caused by sparks emitted from a locomotive running on the defendant's road raises a presumption of negligence against the defendant, and places upon it the burden of showing that the engine alleged to have caused the fire was

properly constructed, was equipped with approved devices and appliances to prevent the escape of fire and sparks, was in good repair and prudently managed and controlled; and upon proof of these facts by the defendant, the presumption arising from the mere communication of fire is rebutted, and the plaintiff can not maintain the action without making further proof of specific acts of negligence or want of care on the part of the defendant.

5.  *Same; same; when question for the court or jury.*—When, in an action against a railroad company to recover damages re· sulting from fire alleged to have been caused by the negligent escape of sparks from a locomotive running on the defendant's road, there is no evidence, direct or inferential, of actual neg- ligence on the part of the defendant, but merely that the fire was caused by sparks emitted from the defendant's engine, and the defendant shows that the engine from which the sparks escaped · was of proper construction, equipped with approved appliances to prevent the escape of fire and sparks, was in good repair and prudently managed and controlled, it then becomes a question for the court and not the jury to determine whether or not the presumption of negligence raised against the company upon proof of communication of fire from sparks from the engine is rebutted, in the sense that the mere presumption will not be given the effect of evidence, so that a conflict of evidence is presented for the considera- tion of the jury.

6.  *Same; same; case at bar.*—In an action against a railroad com- pany to·recover damages for the destruction of cotton by fire, · alleged to have been caused by the negligent escape of sparks from a locomotive running on the defendant's road, where the evidence for the plaintiff tends to show that the fire originated from sparks emitted from the engine of the defendant, but there is no evidence of actual negligence or want of care on the part of the defendant or its employés, and the evidence for the defendant shows that the engine from which the sparks was emitted was properly constructed, equipped with approved appliances to prevent the escape of fire and sparks, was in good repair and properly managed and controlled, the general affirmative charge should be given at the request of the de- fendant.

7.  *Same; same; same.*—In such a case, the mere fact that the cot- ton destroyed was fifty feet from the centre of the track and from the passing engine, does not afford any evidence of actual negligence either in the construction or equipment of the

[Louisville & Nashville Railroad Co. v. Marbury Lumber Co.]

engine or its handling, in the absence of evidence as to what distance a properly equipped and skillfully managed engine under similar atmospheric conditions would throw sparks; and therefore, proof of such fact alone does not raise an adverse inference which requires the submission of the question of negligence to the determination of the jury, making it improper to give the general affirmative charge requested by the defendant, where its evidence shows that the engine emitting the sparks was properly constructed and carefully and skillfully handled.

8. *Same; same; same.*—In such a case, the fact that the engine in passing by the place where the cotton was located was emitting a great many sparks, does not afford any evidence of actual negligence in the construction or equipment of the engine or its handling, when it is not further shown that the emission of sparks was unusual, or that a prudently equipped and properly handled engine would not emit quite as many as the one in question did, loaded as that one was, going at the same rate of speed upon a similar grade, and burning the same kind of fuel.

9. *Action against railroad company to recover damages by fire alleged to have been caused by sparks emitted from a locomotive; contributory negligence.*—In an action against a railroad company to recover damages for the destruction of cotton by fire, alleged to have been caused by the negligent escape of sparks from a locomotive on the defendant's road, the fact that the plaintiff placed his cotton upon his premises so near the track of the defendant's road as that in case there was negligence in the construction of the engine, or in case the agents or servants of the defendant are negligent in its management, the cotton may be destroyed by fire caused by sparks emitted from such engine, does not constitute contributory negligence on the part of the plaintiff, defeating his right to recover for such negligence on the part of the defendant.

APPEAL from the Circuit Court of Autauga.

Tried before the Hon. N. D. DENSON.

This action was brought by the Marbury Lumber Company against the Louisville & Nashville Railroad Company. The complaint contained three counts which were as follows: "1st .Plaintiff claims of defendant the sum of twenty-five hundred dollars ($2,500.00) as damages, for that heretofore, to-wit, the 13th day of Janu-

ary, 1897, the defendant negligently set fire to and destroyed, to-wit, seventy bales of cotton, the property of the plaintiff, located on the premises of the plaintiff of the value, to-wit, twenty-five hundred dollars ($2,500.00) to plaintiff's great damage, as aforesaid.

"2d. The plaintiff claims of the defendants the further sum of twenty-five hundred dollars ($2,500.00) for that heretofore, to-wit, on the 13th day of January, 1897, the defendant negligently set fire to, and destroyed, to-wit, seventy (70) bales of cotton, the property of the plaintiff, of the value, to-wit, twenty-five hundred dollars, to plaintiff's great damage, as aforesaid.

"3d. The plaintiff claims of defendant the further sum of twenty-five hundred dollars ($2,500.00) as damages, for that heretofore on to-wit, 13th day of January, 1897, the defendant, by the negligence of its agents and servants, who were then and there engaged in the operation of a train of cars and engine upon defendant's railway track at Bozeman, Alabama, negligently threw from said engine sparks which set fire to cotton, the property of plaintiff, of the value, to-wit, twenty-five hundred dollars ($2,500.00), and by means thereof destroyed to-wit, seventy (70) bales of cotton to the plaintiff's damage in the sum aforesaid."

To the 1st and 2d counts of this complaint the defendant demurred upon the following grounds: 1st. Said counts fail to show wherein the alleged negligence consisted. 2d. Said counts merely state the conclusion of the pleader. 3d. No facts are shown which constitute negligence.

To the 3d count the defendant demurred upon the following grounds: 1st. Said count states the conclusion of the pleader. 2d. Because it is not shown how or in what manner the agents or servants of the defendants were guilty of negligence in the premises. 3d. Because it is not averred or shown that the engine or cars were negligently handled. These demurrers were overruled, and the defendant separately excepted. The defendant then pleaded the general issue and the plea of contributory negligence, and the cause was tried upon issue

joined upon these pleas. The facts of the case are sufficiently stated in the opinion.

The court in its general oral charge to the jury instructed them, among other things as follows: "If you find that the cotton was burned on account of the negligent act of the defendant, then your verdict should be for the plaintiff." The defendant duly excepted to the giving of this portion of the court's general charge, and also separately excepted to the court's refusal to give, among others, the following written charges requested by it: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "The court charges the jury that it was negligence for the plaintiff to pile the cotton near the track of the defendant, as shown by the testimony in this case." (3.) "The court charges the jury that if they believe from the evidence that the cotton was piled in a pen without any covering of any kind, and without any watchman, then this was contributory negligence on the part of the plaintiff, which will defeat a recovery, and they must find for the defendant." (7.) "The court charges the jury that the fact that the cotton was fired by sparks from defendant's engine does not under the circumstances of this case, raise any presumption of negligence on the part of the defendant." (8.) "The court charges the jury that evidence which merely tends to show that the fire originated from sparks from the engine is not of itself sufficient to shift the burden of proof upon the defendant, to show that its appliances for the escape of sparks and the manner of its train was free from negligence." (9.) "It being a matter of common knowledge that cotton is one of the most inflammable materials known, required an ordinary degree of caution and diligence on the part of the plaintiff, and plaintiff having failed in this, by reason of no protection, such as a covering or guard being provided, or acting in the premises as an ordinary prudent man would act under the circumstances, then this would prevent a recovery by the plaintiff." (10.) "If the jury believe from the evidence that the plaintiff was guilty of such negligence in piling the cotton in the manner proved, and allowing it

16

to remain there the length of time it did, then this would be such negligence on the part of the plaintiff as would defeat its right of recovery." (12.) "The court charges the jury that even if the evidence tends to show that the fire caught from sparks from an engine, yet the jury can not infer that the sparks were negligently emitted, and unless they find from the evidence that the sparks escaped from engine 294 in dangerous and unusual quantities, then they must find for the defendant." (16.) "The court charges the jury that it is a matter of common knowledge that sparks from locomotives, no matter how well constructed, or in what condition, or how carefully handled, escape in more or less quantities, and while such evidence may tend to show that the fire was caused by such sparks, it does not show that they were not emitted in the ordinary natural operation of the engine."

There was verdict in favor of the plaintiff, assessing its damages at $2,358. The plaintiff, however, consented that the recovery should be reduced to $2,218, and judgment was accordingly rendered for this amount. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. JONES & ALEX C. BIRCH, for appellant.—Does the burden of proof as laid down in the case of *L. & N. R. R. Co. v. Reese,* 85 Ala. 497, attach to the defendant? We contend on this proposition, and contend it most strenuously and emphatically, that the onus as laid down in the *Reese case* does not, under the facts and circumstances of this case, fall upon the defendant. The true and liberal doctrine of the Reese case is, substantially this: that upon the proof of the escape of sparks in unusual quantities, or of unusual size, or upon the proof that the same engine had at other times, either prior to or subsequent to the occasion complained of, fired objects along the track, or upon the proof of some unusual fact, there arises a presumption of negligence (1) in the construction of the engine, (2), the appliances used to prevent accidents from the escaping sparks, or (3) the man-

agement of the engine, and casts on the railroad the onus of showing the use and due management of the proper appliances and engine.

In *L. & N. R. R. Co. v. Malone,* 109 Ala. 509, COLEMAN, J., said: "The law is that, if a fire is caused by sparks emitting from an engine in *unusual* and *dangerous* quantities, *prima facie,* the cause is attributable to the negligence of the defendant either in not having the engine handled with due care and skill, or else in not having proper appliances to arrest and suppress the sparks."

Clearly, it was the purpose and intention, in laying down this doctrine, to hold that some unusual fact, upon which a presumption of negligence could be predicated, must first be proved before the burden falls on the defendant. The following are instances in which it has been held that the burden did not attach: in those cases in which something unusual is shown, as testimony that the sparks were as large as a pigeon egg, or that they came down in a perfect shower, or that the same train fired objects all along its path, immediately prior or subsequent to the injury complained of—*C. & W. R. R. Co. v. Cahill,* 56 Ill. 28; *Albert v. N. Y. Cen.,* 98 Pa. St. 316; *Mo. Pac. R. R. Co. v. Bartlett,* 32 Amer. & Eng. R. R. Cases, 346.

A railroad company may rebut the inference of negligence, which arises when the plaintiff proves that the fire originated by sparks from the defendant's engine, by showing that the engine was provided with the best methods known for arresting sparks, and that it was in good order and skillfully managed.—*Pittsburg &c. R. R. Co. v. Hixson,* 8 Am. and Eng. R. R. Cases, 330; *Gulf &c. R. R. Co. v. Benson,* 32 Id. 330; *Phila. &c. R. R. Co. v. Schulz,* 2 Id. 271; 15 Id. 531; 13 Id. 476; *L. & N. R. R. Co. v. Reese,* 85 Ala. 497; *L. & N. R. R. Co. v. Miller,* 19 So. Rep. 989; *L. & N. R. R Co. v. Malone,* 109 Ala. 509.

Can there be an absolute, unqualified arbitrary ownership of property—an ownership that entitles the owner to make his own use and convenience the criterion and measure of his duty in this use as regards others in such

[Louisville & Nashville Railroad Co. v. Marbury Lumber Co.]

use? In *A. G. S. R. R. Co. v. Arnold*, 35 Am. and Eng. R. R. Cases, STONE, J. well says: "It is a rule of law, as well as a lesson of common experience, that precautionary requirements increase in the ratio that danger becomes more threatening."—*Railroad Co. v. Webb*, 97 Ala. 308, 12 South. 374; *Sampson's Case*, 8 South. 778.

The gist of our contention is that if the owner of property knowingly places it in a place of threatened danger, that then a neighborly duty, social as well as moral, falls upon him to exercise an increased caution, and that if his failure to exercise this increased caution is the direct and proximate cause of the destruction of his property, then his own contributory negligence precludes a recovery. *Loker v. Damon*, 17 Pick. 284; *Bartlett Case, supra; Post v. Buffalo R. R. Co.*, 108 Pa. St. 585; *Great West. R. R. Co. v. Haworth*, 39 Ill. 347; *Coates v. Mo. R. R. Co.*, 61 Mo. 38; *M. & W. R. R. Co. v. McConnell*, 27 Ala. 481.

As sustaining our contentions in this case, we refer to the following cases: *Murphy v. Chicago Railway Co.*, 45 Wis. 422; s. c. 30 Am. Rep. 721; *Penn. Co. v. Gallatine*, 77 Ind. 320; *Birge v. Gardiner*, 19 Conn. 507; *Bevier v. Delaware & Hudson Canal Co.*, 13 Hun. 254; *Brown v. R. R. Co.*, 37 Mo. 187; *Ry. Co. v. Brady*, 17 Kan. 380; *Ry. Co. v. Mayfield*, 72 Ill. 95; *Ry. Co. v. Haworth*, 39 Ill. 346; *Kesee v. R. R. Co.*, 30 Ia. 78; 47 Ill. 497; *Ib.* 505; 51 *Ib.* 78; 17 Kan. 308; 45 Mo. 422; 69 Tex. 674; 58 Wis. 335; 54 Ill. 155; 64 Am. Rep. 643; 1 Thomp. on Negligence, 163.

TOMPKINS & TROY, *contra.*—In *L. & N. R. R. v. Reese*, 85 Ala. 497, the question was settled in this State that proof of the fact of the destruction of property by fire which had escaped from a passing engine, is *prima facie* evidence of negligence in the construction or management of such engine. In this case, the proof shows without dispute that the fire occurred shortly after an engine had passed, and broke out on the side of the cotton pen next to the railway track, and that there was an entire absence of any other cause; that the wind was blowing from the direction of the engine to the cotton; that there

were no houses or other sources from which fire could come in the direction from which the wind was blowing; that there was no fire in the mill or store or any other building in close proximity to the cotton; that hot and burning sparks did fall in large quantities at two points on the same side of the track that the cotton was on just after the engine passed the cotton; that there was considerable exhaust to the train, which was a light one and under full headway, when such exhaust was unnecessary, and that a heavy exhaust was likely to produce sparks. The sole contention to the contrary is that the engine was properly equipped and properly handled. There can be no question, therefore, that the evidence was sufficient to submit to the jury that the cotton was burned by sparks which escaped from the engine. But more than this, there was not only a *prima facie* case of negligence, but it was a question for the jury to determine under all the circumstances whether or not the defendant was actually negligent.

The very fact that sparks escaped in such quantities is itself evidential of negligence. The *prima facie* case made by plaintiff consists of the mere proof of burning by sparks; but the testimony of plaintiff goes far beyond that and shows additional circumstances which tend to prove that that burning by sparks was from the negligent conduct of defendant.

At common law the rule was very strict, and an absolute liability was imposed when proof was made that one person had destroyed the property of another by fire. Modern inventions and the use of steam have made necessary a modification of that rule. And it has been modified to the extent stated in the Reese case, namely that the destruction of property by fire escaping from a railroad engine "raises an inference of negligence consisting in a defect in its construction or in the appliances used, or want of due care in its management."

This rule has been re-affirmed in the recent cases of *L. & N. R. R. Co. v. Miller*, 109 Ala. 500; and *L. & N. R. R. Co. v. Malone*, 109 Ala. 509.

There can be no question that a large majority of the

decisions, and by all means the best considered decisions, hold that proof of fire by trains is *prima facie* evidence of negligence.—8 Am. & Eng Ency. of Law, pp. 9, 10, notes; *G. H. & S. A. R. Co. v. Horne*, 35 Am. & Eng. R. Cases, 238, and notes on p. 242.

The second main question in the case is the one of contributory negligence. It is clear and undisputed that the plaintiff kept a store and bought cotton, and had been so engaged for several years, and had for several years piled its cotton in a pen at the point at which it was destroyed; that the nearest point of this pen was two inches off the right of way of this defendant, and that the cotton was wholly on the land of the plaintiff. We say that under such circumstances there could be no issue of contributory negligence in this case. If the cotton had been on the premises or right of way of the defendant, a different question would arise. For the first time this court had a like question before it for consideration in the case of *L. & N. R. R. Co. v. Malone,* 109 Ala. 509. There a plea setting up contributory negligence was stricken from the file because from facts apparent upon its face it could not be made a good plea. And the court in coming to its conclusion adopts the rule laid down in the 8 Am. & Eng. Ency. of Law, at p. 16, that "when the plaintiff uses his land in a natural and proper way for purposes for which it is suitable, he is not chargeable with contributory negligence from a failure to take precautions against the negligence of the railway company." The putting of his house on his land by Malone was as much the result of human conduct as the piling of cotton on its land by the Marbury Company, and each was as lawful and proper an act for the one to do upon his premises as the other; and yet we hardly apprehend that if the fire in the Malone case had occurred from the catching of a shingle instead of from the catching of leaves, the decision would have been different. To the same effect see *Mississippi Home Insurance Co. v. L. N. O. & T. Co.,* 12 So. Rep. 159-160, and cases cited; *Fero v. Buffalo Co.,* 22 N. Y. 209; *Jacksonville &c. Co. v. P. L. Co.,* 9 S. R. 675; 3 Elliott on Railroads, §1238; *Salmon v. R. R. Co.,* 38 N. J. L. 5.

[Louisville & Nashville Railroad Co. v. Marbury Lumber Co.]

TYSON, J.—The complaint contains three counts.
Counts one and two are substantially the same. They
are no more than legal conclusions. Not a single fact
is alleged in either out of which any duty arose or was
owing on the part of the defendant to the plaintiff, nor
in what the breach of duty consisted upon which the
plaintiff predicates the defendant's negligence. It would
be difficult to frame counts more general, and containing
less information to the defendant as to what it is re-
quired to defend against than these. As to whether the
plaintiff complains of the defendant for the negligent
destruction of its cotton while the cotton was *in transitu*,
in the warehouse of the defendant, upon the platform
of defendant's station house, on the right of way of the
defendant or on the premises of the plaintiff, count
number two does not inform us. Furthermore, by what
means or through what agency the fire was communi-
cated to plaintiff's cotton is also a matter of conjecture.
Whether by sparks emitted from a passing engine which
directly set fire to the cotton or to some inflammable
substance upon the defendant's right of way and thereby
communicated to the cotton, or whether by carelessness
of some one in charge of the station, the house or plat-
form of the defendant was destroyed by fire which
burned the cotton, or by the carelessness of some agent or
servant of defendant in the handling of a lighted lamp,
candle, match or torch communicated the fire to the cot-
ton, we are not informed, as we have said, by either of
these counts. It requires no argument to show that the
defendant would be at a serious disadvantage if re-
quired to take issue upon a complaint couched in such
broad language as that affords it no information what-
ever as to the act of non-feasance or misfeasance com-
plained of. If the fire was communicated to the cotton
in either of the ways suggested, and of which the plain-
tiff would have the right to make proof, if issue was
taken upon the count, the character of the evidence re-
quired of the defendant to rebut the contention would
be materially and entirely different. Should plaintiff
rely upon a destruction of the cotton by means of sparks
from a passing engine, the question of the proper con-

struction or handling of the engine would be the issue. Should it rely upon the destruction of the cotton by the careless handling of a lighted lamp, candle, match or torch by the agent or servant of the defendant, the issue would be radically different.

The pleadings must be as brief as is consistent with perspicuity and the presentation of the facts or matter to be put in issue, in an intelligible form. No objection can be allowed for defect of form, if *facts* are so presented that a material issue in law or fact can be taken by the adverse party.—Code, § 3285.

In *Phœnix Insurance Co. v. Moog,* 78 Ala. 301, this court said: "Precisely the same principle applies to averments of negligence, whether urged by way of defense or in maintenance of an action. It is not sufficient to aver mere conclusions of law—the facts must be averred from which the conclusion of negligence is deducible." After quoting this rule, Justice CLOPTON, in *Ensley Railway Co. v. Chewning,* 93 Ala. 26, said: "This rule has been relaxed from necessity in cases where the cause of action consists in the non-performance or misperformance of duty. In such cases the rule has been thus stated: 'When the *gravamen* of the action is the alleged non-feasance or misfeasance of another, as a general rule, it is sufficient, if the complaint avers, *facts* out of which the duty to act springs, and that the defendant negligently failed to do and perform etc.; not necessary to define the *quo modo* or to specify the *particular* acts of diligence he should have employed in the performance of such duty.' The reason given is, 'what the defendant did and how he did it and what he failed to do are generally better known to the defendant than to the plaintiff; and hence it is that, in such cases, a *general* form of *averment* is sufficient.' " This rule is announced and recognized as the proper one by this court, in the cases of *Mobile & Ohio Railroad Co. v. George,* 94 Ala. 214; *Bessemer Land & Improvement Co. v. Campbell,* 121 Ala. 50; *Montgomery St. R'y Co. v. Armstrong,* 123 Ala. 233, and others. In each of these cases, however, there was a general averment of fact constituting the non-performance

or misperformance of duty out of which the negligence of the defendant arose as well as the facts out of which the duty to act sprung. Courts of other jurisdictions recognize and enforce this rule and it is stated generally to be that the complaint or declaration in actions for negligence should allege a duty owing the plaintiff by the defendant or state the facts from which the law will imply the duty and the plaintiff need not set out in detail the specific acts constituting the negligence complained of, as this would be pleading the evidence.—14 Ency. Pl. & Pr. 331, 333. In the well considered case of *Snyder v. Wheeling Electrical Co.*, 43 W. Va. 661, the Supreme Court of West Virginia interprets and applies the rule under consideration. It is there said: "One error alleged is the action of the circuit court in overruling a demurrer to the declaration. The specification of its defect is that it ought to, but does not set forth the duty and aver the neglect;" and citation is made of the language in the opinion of *Clarke v. Railroad Co.*, 39 W. Va. 732, that a declaration in "tort must have requisite definiteness to inform the defendant of the nature of the cause of action and the particular act or omission constituting the tort," and reference is made to *Poling v. Railroad Co.*, 38 W. Va. 645, holding that a declaration for negligence "is good if it contain the substantial elements of a cause of action, the duty violated, the breach thereof properly averred, with such matters, as are necessary to render the cause of action intelligible, so that judgment according to law and the very right of the case can be given." I think these statements are good law. Hogg Pl. and Forms, section 140, says: "That it is settled as a general rule that it is necessary to state the particular acts which constitute negligence. This is so, but we must take care not to misapply this statement. The West Virginia cases cited to sustain the rule are cases against railroads for killing stock. If a declaration allege that a railroad killed stock by negligently running over it, as in those cases, that would be sufficient, without more details of the circumstances of running over it; but I take it that it would not be enough simply to say that the company negligently killed a

horse. You must aver the duty and aver the existence or presence of negligence in its performance and specify the act working damage, but need not detail all the evidential facts of negligence. You must tell the defendant, even under this general rule, that he negligently did a specific act doing harm. In other words, you may say that the defendant negligently did or did not do so and so, without detail as to the mere negligence, but you must state the acts that are the basis of his liability.   *   *   * The object of a declaration is to give the facts constituting the cause of action, so they may be understood by the party who is to answer them, and by the jury and court who are to give verdict and judgment on them; and though, in an action for negligence, it is not necessary to state with particularity the acts of omission or commission, yet lest too loose a practice shall grow under this rule, it may be well to state   *   *   that this rule does not justify a general and indefinite mode of declaring, admitting of almost any proof.   *   *   To avoid misunderstanding, it is important to add that the declaration need not state the particular facts that are not primary or main facts, but only are evidence of primary facts. When the primary facts are given, then all other facts merely incidental that go to prove the primary facts may be proven without specification in the declaration."

The requisites of a good declaration in action for negligence are well stated by WILLES, J. in *Gautret v. Egerton*, L. R. 2 C. P. 371, 374. "It ought," he says, "to state the facts upon which the supposed duty is found, and the duty to the plaintiff with the breach of which the defendant is charged. It is not enough to show that the defendant has been guilty of negligence and *how he became* bound to use care to prevent injury to others."

"Such a duty arises out of some relation existing at the time between the person injured and the defendant, which the complaint, by the averment of facts should show."—*Thiele v. McManus*, 3 Ind. App. 132.

See also a statement and application of this doctrine in *Smith v. Tripp*, 13 R. I. 152; *Kennedy v. Morgan*, 57 Vt. 46 ;*The Flint & Pere etc. R'y Co. v. Stark*, 38 Mich. 714;

*The City of Buffalo v. Holloway,* 7 N. Y. 493.; *Splittorf v. The State,* 108 N. Y. 205; *Sweeny v. Old Colony & Newport R. R. Co.,* 10 Allen 368; *Angus v. Lee,* 40 Ill. App. 304, and *Seymour v. Maddox,* 71 E. C. L. 326.

In *Metcalf v. Hetherington,* 11 Ex. Rep. 257, it is said: "A declaration which charges a breach of duty, must contain an allegation from which the duty can be inferred, otherwise the declaration is bad."—*Dutton v. Powles,* 2 Best. & S. 174, 31 L. J. Q. B. 191; *Cone v. Chapman,* 5 Adol. & E. 647; *Hurdman v. N. E. Railway Co.,* 3 C. P. Div. 168; Form of complaint in actions against railroad company for negligence in using and managing locomotives found on page 351 of Heard's Civil Precedents.

Count number 3 differs in substance only from counts 1 and 2 in the averment "the defendant, by the negligence of its agents and servants who were then and there engaged in the operation of a train of cars and engine upon defendant's railway at Bozeman, Alabama, negligently threw from said engine sparks, which set fire to cotton," etc. Here again not a single fact is averred out of which the duty to act arose, and it is as defective in this respect as counts 1 and 2. At best, what duty was due to the plaintiff by the defendant in the performance of the act by its agents or servants in throwing from the engine sparks, lies in mere inference, argument or deduction. It is certainly not averred. "Facts, and not mere inferences, arguments or deductions, are required to be alleged in pleadings."—*Meadows v. Meadows,* 73 Ala. 356.

In my opinion the counts are bad, and the demurrer to each of them should have been sustained. A majority of the court, however, do not agree with me but hold the counts are sufficient. To my mind this holding not only emasculates the statute (§3285), but contravenes all rules of good pleading as well as many well considered opinions in other cases delivered by this court, where negligence is the gravamen of the action.—*Central R. R. Co. of Georgia v. Lamb,* 124 Ala. 172.

The testimony offered by the plaintiff tended to show that sixty-six bales of cotton belonging to it of the value of $2,200, located on its premises fifty feet and two inches from the center of the defendant's track, were destroyed

by fire originated by sparks emitted from passing engine No. 294 attached to freight cars. It was shown that there was no fire at the time in any of the buildings adjacent to the cotton from which a spark would probably have fallen. That the wind was blowing from the track in the direction of the cotton at the time the train passed. That the train did not stop at the station, but ran by at a rapid rate of speed, and that the locomotive was emitting a great many sparks. The witnesses for the plaintiff say that the only thing they noticed unusual about the engine or the train was the rapid speed at which it was traveling when it passed. The evidence shows also that the train at this point was going up grade and that an engine emits more sparks in climbing a grade, than when running upon a level track, on account of the exhaust being greater.

The evidence introduced by the defendant established without dispute that the train was a light one and was managed by skillful persons, in a proper manner. That the locomotive was equipped with the latest practical improved appliances to prevent as far as possible the emission of sparks and was in good repair and condition. That the appliances upon this engine were such as are used by other well regulated roads. That no appliance or equipment would prevent the escape of sparks. That the appliance upon this engine was a wire netting with apertures in it to allow the exhaust to pass through. That if the apertures were smaller than those in use upon this engine, it would cause it to choke, and when this occurred, the engine would not produce steam. That when the train passed Bozeman station, where the cotton was destroyed, the engine was emitting no more than the usual amount of sparks and the quantity of sparks escaping depends upon the exhaust—when great the sparks would fly further and higher.

The first question presented is the one involving the burden of proof, and the extent of its operation. As to the burden, whether on the plaintiff to show some fact establishing negligence on the part of the defendant in the operation or equipment of its engine, or whether upon the defendant to prove due care in its handling and

equipment after proof by plaintiff of the origin of the fire from sparks emitted by it, the courts are at variance. It seems, however, that in this State the rule is, that the mere communication of fire by a railroad engine is of itself sufficient to raise a presumption of negligence against the company. It has its foundation in the practical necessities of the case. Its locomotives from which the fire escapes are entirely within the control and under the supervision of the company, and its agents or servants know whether or not they are properly equipped to prevent the escaping of fire, and they know whether any mechanical appliances were employed for that purpose and if so, what was their character, while on the other hand the owner of the property consumed has little or no opportunity to learn whether it was a case of unavoidable accident or negligence. Such facts may be easily obtained and proved by the company; and if its appliances are of proper pattern and construction and in good repair, and there has been no negligence in the operation of the engine, the presumption of negligence arising from the escape of fire can be rebutted. Care should however be observed, to distinguish between the *prima facie* presumption of negligence raised against the company upon proof of communication of fire from sparks from an engine, merely for the purpose of shifting the burden of proof and *prima facie* evidence of negligence in fact, lest the rule be misapplied; and the presumption indulged to an extent of making out the plaintiff's case as against the undisputed evidence of the exercise of due care in the handling and the proper construction of the engine. The extent of the rule is as said by Justice CLOPTON in *L. & N. R. R. Co. v. Reese*, 85 Ala. 502: "We do not understand, that in actions for injuries caused by negligent escape of fire from a railroad engine, it operates, or is intended to abrogate or modify the general rule, which makes it incumbent on the plaintiff, in the first instance, to establish a *prima facie* case, or to devolve on the defendant the burden of doing more than disproving the *prima facie* case shown by the plaintiff. Railroad companies, being authorized to employ the powerful and dangerous agency of steam, are required

by law to use due and reasonable care to prevent injury to the property of others; as has often been said, a higher degree of care. Reasonable care, however, does not require the adoption of every new invention and contrivance, which science may or can suggest as to the utility of which men equally skilled may differ. They fulfill the measure of their duty, in this respect, by adopting such appliances and contrivances as are in practical use by well regulated railroad companies, and which have been proved by experience to be adapted to the purpose. When they have discharged this duty, they are not liable for accidental injuries caused by the escape of fire from their engines. The mere fact that a fire originated from sparks, emitted from an engine, is not sufficinet to fasten a liability on the company, neither does the rule so operate. It is not a rule liability, but of evidence.   *   *   On the advanced progress in mechanical appliances, and the practical demonstration of their utility and efficiency, a reasonable inference may arise, when fire originates from sparks emitted by a locomotive in sufficient quantity or volume to occasion damage, that the engine is not properly constructed, or that it has not the improved appliances, or is not managed with care. When the inference is repelled by proof of the proper construction of the engine, and use of the proper appliances and careful management, the plaintiff cannot maintain the action, without making proof of other negligence or want of care."

This principle is stated in 13 Am. & Eng. Ency. Law (2d ed.) 504, and supported by the authorities cited in the notes, to be: "The general rule on this subject is that if the defendant shows that the engine alleged to have caused the fire was of proper construction, and equipped with approved devices and appliances to prevent the escape of fire and sparks, was in good repair and prudently managed and controlled, the *prima facie* presumption arising from the mere communication of fire will be rebutted." And as to whether the presumption is rebutted, is for the court or jury, the rule seems to be, "that where there is no evidence, direct or inferential, of actual

negligence, then if proper evidence of due care in all respects is presented by the defendant the case will be one for the court, in the sense that the mere presumption will not be given the effect of evidence, so that a conflict of evidence for the jury is presented."—Ib. 507. And this statment of the rule is recognized and announced in the quotation above from *L. & N. R. R. Co. v. Reese*, 85 Ala. 502.

In *Spaulding v. The C. & N. W. Railway Co.*, 33 Wis. 591, is is said: "But the learned counsel for the plaintiff very ingeniously argue, that the presumption that the defendant's locomotives were not properly constructed and equipped, has the force and effect of testimony in the case; and that the question whether the testimony introduced for the purpose of overcoming such presumption is sufficient for that purpose, is necessarily a question of fact to be determined by the jury. The argument would probably be a sound one, were this a presumption of fact. Its weight and force, and consequently the amount of proof essential to overcome it, would in such case be for the jury, and not for the court, to determine. But the presumption under consideration is clearly one of law, and is governed by an entirely different rule. Its weight and effect, and the amount and character of the proof necessary to overcome it, are questions for the court, and were determined by this court on the former appeal. In such cases, if there is a conflict of testimony, the jury must determine what facts are proved; but where, as in this case, there is no such conflict, and the testimony is clear and satisfactory against the presumption, it is the duty of the court to hold, as matter of law, that the presumption is overcome. If, instead of doing so, the court leaves it to the jury to determine the fact, it is error, which will work a reversal of the judgment."

Again the same court said in *Spaulding v. C. & N. W. R'y Co.*, 30 Wis. 122, 123: "The presumption, therefore, of negligence or of the want of proper equipment, arising from the mere fact of fire having escaped, is not conclusive, nor, indeed, a very strong one, but, of the two, rather weak and unsatisfactory. It is indulged in merely for the purpose of putting the company to proof and

compelling it to explain and show, with a reasonable and fair degree of certainty, not by the highest and most clear and unmistakable kind of evidence, that it had performed its duty in this particular.'' This case was cited approvingly in *L. & N. R. R. Co. v. Reese, supra.* Wood on Railroads, pp. 1576-77 and note 1; Sherman & Redfield on Neg., (5th ed.) 676 and note 12; *McCraig v. Erie R. Co.,* 8 Hun. (N. Y.) 599; *Menominee River S. & D. Co. v. Milwaukee & N. R. Co.,* 91 Wis. 459.

In kindred cases, involving the presumption of negligence for killing stock, where the burden of proof is cast upon the railroad company by the statute, this same principle has been frequently recognized and enforced by this court.—Code, § 3442; *A. G. S. R. R. Co. v. Moody,* 90 Ala. 46; *L. & N. R. R. Co. v. Hembree,* 85 Ala. 481; *A. G. S. R. R. Co. v. Smith,* 85 Ala. 208; *A. G. S. R. R. Co. v. McAlpine,* 75 Ala. 113, 121; *Anderson v. B. M. R. R. Co.,* 109 Ala. 129.

Applying these principles to the facts as disclosed by the record in this case, conceding that the evidence introduced by the plaintiff tends to establish that the fire originated from sparks emitted from the engine of defendant, it must be held as a matter of law that the presumption indulged is rebutted, and the defendant entitled to have the affirmative charge requested by it to be given.

It may be and doubtless will be said that the cotton destroyed was fifty feet from the center of the track, making it, practically, the same distance from the passing engine, and that this fact affords some evidence of actual negligence either in the construction or equipment of the engine or its handling. In the absence of evidence as to what distance a properly equipped and skillfully managed engine, under similar atmospheric conditions, would throw sparks, it is obvious that in order for the jury to conclude from the fact that the cotton was located fifty feet away from the track when destroyed is evidence of negligence, they must indulge a presumption of negligence or base their conclusions upon their own judgment, experience or knowledge. Confessedly the defendant is not answerable in damages

for the reasonable exercise of a right.  Being authorized by law to operate its locomotive engines by steam, which of necessity must be generated by the use of fire, and it being impossible to construct them so as to be successfully operated without emitting sparks or burning cinders, its liability arises only when it is shown that this right was exercised negligently or maliciously.  Courts cannot presume the wrongful or negligent exercise by it of the lawful right, but affirmative proof of some fact tending to establish the wrongful or negligent exercise of it by the defendant must be adduced.—8 Am. & Eng. Ency. of Law, p. 11 and note 1.  Nor can jurors be permitted to consult their own judgment, experience or knowledge for the purpose of supplying a deficiency in the proof.  In the exercise of their judgment, experience or knowledge, they must be confined to the weight, credibility and sufficiency of the evidence offered.  Their province is "to determine the facts in the case from testimony given by witnesses and not from their own judgment, or experience or knowledge."—*Burrows v. Delta Transportation Co.*, 29 L. R. A. 468.  Nor can they take judicial cognizance of the fact that sparks may be borne a given distance by the wind.—*Hinds v. Barton*, 25 N. Y. 547.

In the case of *Musselwhite v. Receivers*, 4 Hughes (U. S.) 166, the distance was forty yards, and the court directed a verdict for the defendant, saying: "The trains in this case were running lawfully over the company's property;  *  *  running thus, they are not responsible for fires arising from sparks, proceeding from their own engines unless it is proved that the emission of the sparks was due to negligence on the part of the defendants, either in using engines improperly equipped and furnished; or in using properly furnished engines in some negligent manner."

In *Hagan v. Railroad Co.*, 86 Mich. 615, the building destroyed was 160 feet from the track.  The opinion expressly points out the evidence tending to prove actual negligence and the decision is made to rest upon that point and not upon the distance.

In *Pa. & N. Y. Canal & R. R. Co. v. Lacey*, 89 Pa. 458, the distance was ninety feet from the railroad, and yet the court justified the submission of the case to the jury upon the ground that the evidence showed the emission of unusually large cinders by the locomotive. To the same effect is *Sheldon v. Hudson River R. R. Co.*, 14 N. Y. 218; where the distance was 67½ feet; *Huyett v. Philadelphia & Reading R. R. Co.*, 23 Pa. St. 373, where the distance shown was 77 feet; *Mo. Pac. R'y Co. v. Tex & P. R'y Co.*, 41 Fed. Rep. 917, the distance being from 100 to 150 feet; *Gumbel & Co. v. Railroad Co.*, 48 La. Ann. 1180, the distance shown to be more than 40 feet, though how much further is not stated; *Ill. Cent. R. R. Co. v. McClelland*, 42 Ill. 355, the distance was proven to be 100 feet.

In *Hull v. S. V. R. R. Co.*, 14 Cal. 387, while the distance is not shown in the statement of facts, the court said: "There was proof to show that this result was not probable from the ordinary working of the engine," and sustained the ruling of the lower court in submitting the question of negligence *vel non* to the jury for this reason.

Many other cases can be found where the distance between the property destroyed and the track was greater than here, yet in none of them is it intimated by the court, that mere proof of this fact was evidence of negligence in fact. Nor can the expression in the case of *L. & N. R. R. Co. v. Malone*, 109 Ala. 516, that "We are of opinion that it can be laid down as a sound proposition of law, in nowise dependent upon the experience and observation of jurors, as distinguished from common knowledge, that if fire is originated by the falling of sparks from an engine at a distance of sixty-three feet it is the result of negligence, arising either from improper management of the engine or defective appliances," when construed in connection with the evidence in the cause, be said to so hold. For the Justice delivering the opinion expressly says in the next succeeding sentence that "Certainly the testimony here referred to was undisputed "that it was impossible for engines of that construction and same appliances to set fire to any-

thing along its (defendant's) track." If this was true, and the fire did originate from the sparks emitted from an engine, then of necessity there must have been some defect in the equipment of the engine or a negligent operation of it. That case is clearly distinguishable from the one under consideration. In that case there was evidence of "an unusual and large rush of sparks from the engine" and as we have above pointed out that it was impossible for engines properly equipped and handled to emit sparks which would set fire to property along the track. No such evidence was introduced in this case. Had there been, in view of the evidence offered by the defendant, the question of actual negligence *vel non* would have been a question of fact for the jury. The first above quotation from *L. & N. R. R. Co. v. Malone* construed properly is not at variance with the principles announced in *L. & N. R. R. Co. v. Reese, supra,* which is the almost universal rule in England and this country. And does not go to the extent of holding the presumption, which we have shown cannot be accorded the effect of evidence, to establish actual negligence, but simply indulged by the courts for the sole purpose of requiring the company to explain and show that it has performed its duty with respect to the equipment and operation of its locomotives, is a conclusive one, incapable of rebuttal. Manifestly this is true when we take into consideration, that no man can say to what precise distance a spark may be driven by the wind and kept alive by the atmospheric conditions prevailing at the time of its emission and also the fact, which is common knowledge and proven undisputedly in this case, that fire will escape from the best equipped and most prudently operated locomotives in sufficient quantities to ignite combustible material along the track.—*L. & N. R. R. Co. v. Miller.* 109 Ala. 506.

Again, it may be said that the plaintiff's evidence shows that the engine was emitting a great many sparks. But it was not shown that this was unusual, or that a properly equipped and prudently conducted engine would not emit quite as many as this one did, loaded as this one was, going at the same rate of speed upon a similar grade and burning the same kind of fuel. Indeed, the

witnesses for the plaintiff say that they noticed nothing unusual about the engine or its operation except its speed, and the engineer operating the engine testified that it was emitting no more sparks than the usual amount when passing the point where the cotton was located. "Proof that the fire occurred while the engine was running at rate of speed greater than that allowed by law does not of itself establish the liability of the company."—3 Wood on Railroads, p. 1603. This being so, obviously when the rate of speed was not regulated by any statute as in this case, the rapidity with which the train was traveling cannot have the effect of tending to prove negligence in the construction, equipment or operation of the engine. While the evidence introduced by the plaintiff was competent for the purpose of proving the communication by fire of sparks emitted by the engine, yet it does not tend in the remotest degree to prove negligence in fact, which the plaintiff is bound to do, after the shifting of the burden upon it by the proof made by the defendant of due care. See also *Scarles v. M. R. Co.*, 101 N. Y. 661; *Grant v. P. & N. Y. R. Co.*, 133 *Ib.* 657; *Flinn v. N. Y. C. & H. R. R. Co.*, 142 *Ib.* 11; *Metropolitan R'y Co. v. Jackson*, 18 English Ruling Cases, 677.

The remaining question which we will discuss is the one involving the doctrine of contributory negligence invoked against the plaintiff in placing its cotton upon its premises so near the track of the defendant's road as that in case the agents or servants of the defendant are negligent in the management of the locomotive or in case there is negligence in the construction of the engine, the cotton may be destroyed by fire, caused by sparks emitted from the engine. Where contributory negligence is pleaded, it is a plea in confession and avoidance, which admits negligence on the part of the defendant, but seeks to avoid liability therefor by alleging that the plaintiff was guilty of negligence which contributed to his injury. 5 Ency. Pl. & Pr. 11. "Assuming as a postulate, the negligence of a defendant as a proximate cause of an injury, then the essential elements of contributory negligence

on the part of a person injured, are, 1. A failure on his part or the part of some person with whose negligence he is chargeable, to exercise ordinary care to avoid injury; and, 2. A proximate connection between such failure to exercise ordinary care, and the injury, so direct and immediate, that, but for such want of ordinary care, the injury would not have occurred. That is, the negligence of the defendant and the negligence of the plaintiff must have been so inextricably mingled together, jointly and in combination causing the injury, that it cannot be said that the injury would have happened had the plaintiff or person injured been free from fault at the time of the injury. But plaintiff's act of omission when only a remote cause, or a mere antecedent occasion or condition of the injury is not contributory negligence."—4 Am. & Eng. Ency. Law, 18 and notes.

The only limitation upon the right of enjoyment of one's property is to do so in such manner as not to injure that of another—*sic utere tuo ut alienum non lœdas.* This is the sum and substance of his whole duty.

In placing his cotton upon his own premises, the plaintiff was in the exercise of a lawful right and no possible injury could come from that act to others. He cannot be required in locating it to anticipate the negligence of the defendant. On the contrary he would have the right to presume that the defendant would use properly equipped locomotives, and that its agents or servants would operate them in a careful manner. It is true the plaintiff is chargeable with the knowledge that properly constructed and equipped engines carefully handled when in operation emit sparks. And should he place his property within the area within which sparks or live cinders may fall from a properly equipped engine, carefully handled, and it is destroyed by fire caused by sparks so emitted, it is his loss. But this loss must be attributed to the fact that the railroad company has been guilty of no negligence and cannot be made to rest upon the doctrine of contributory negligence. The fact that the area within which sparks or live cinders may fall from a properly equipped engine, carefully handled, is incapable of definite ascertainment does not and cannot affect the

principle.   The area within which they are likely to fall
and ignite inflammable substances depends upon the at-
mospheric conditions, the velocity of the wind, the speed
of the engine at the time they are emitted and many
other conditions.   However, the railroad company, while
operating its properly equipped engines in a careful
manner is not responsible for results flowing from the
action of any of these conditions upon the sparks or hot
cinders emitted by them.   The principles involved in the
question under consideration are very clearly stated in
the case of *Philadelphia & Reading Railroad Co. v. Hen-
drickson,* 80 Pa. St. 182.   It is there said: "The defend-
ants rested their case on the condition of the roof of the
barn and the dry weather.   The substance of the defend-
ants' points was, that if the condition of the barn was
such as to render it more liable to take fire than if it had
a secure and safe roof, the plaintiff was guilty of contrib-
utory negligence in suffering it to be in that condition.
This is clearly unsound and if sustained would require
the owner of property lying along a railroad to keep it in
a condition to be always safe from sparks or fire thrown
from the passing engines.   It would deprive the owner
of the enjoyment of his property in the way most suited
to himself.   He could not put his hay into stacks or ricks
or suffer straw to lie around his barn for his cattle to
feed or rest upon.   He must keep his houses, out-houses,
stables and barns under the best known safe roofs or in-
sure them against the negligence of the company.   An
owner of property near to a railroad must run all the
risk of a proper and careful use of the road, for this is the
company's right.   When the railroad company uses the
most approved spark arresters and the proper care and
vigilence in the running of its engines and the land-own-
er's barn or hay rick or meadow takes fire from the
sparks thrown out, he has no remedy.   It is his own risk,
if he build too near to the railroad or erects his stacks
or scatters his straw where they may be consumed by
fire caused by no negligence.   But when actual negli-
gence is proved and the loss arises from it, the mere con-
dition of his property is no defense to the company.   *   *
The conclusion from the cases is very clear, that a plain-

tiff is not responsible for the mere condition of his premises lying along a railroad, but in order to be held for contributory negligence, must have done some act or omitted some duty which is the proximate cause of his injury, concurring with the negligence of the company." The placing of the cotton in the place where it was when destroyed cannot be said to be the proximate cause of its destruction, but a mere condition. If destroyed by the negligent act of the defendant this was the direct and proximate cause. We are aware that in some jurisdictions the doctrine of contributory negligence has been recognized and enforced in this class of cases. But the great weight of authority in this country and in England is decidedly the other way. Upon principle, we do not think it has any application to this sort of a case.— 8 Am. & Eng. Ency Law, 16, and authorities cited in note 1; Sherman & Redfield on Neg., § 679, and note; note on page 74 of 38 Am. Dec.

Reversed and remanded.